Abraham J. Gellinoff, J.
This is a proceeding to set aside and annul a determination of the respondent Commissioner of Licenses of the City of New York that sales of theatre tickets at, various stores of R. H. Macy & Co. Inc. do not require licenses and do not violate the law or the regulations promulgated by (lie License Commissioner. The petitioner is a membership corporation whose members are licensed theatre ticket brokers.
In December, 1963, respondent’s predecessor granted permission to Shubert Enterprises to maintain and operate ticket booths at five Macy stores for the sale of tickets, at box-office prices, to performances at Shubert Theatres, said booths to be operated by the Shuberts at their own cost and expense. Thereafter, in May, 1964, this permission was extended so as to allow sales at the Macy booths of tickets to non-Shubert theatres. A hearing was held by the Commissioner, at which the petitioner was afforded an opportunity to offer evidence that the ticket sales at the Macy booths were illegal because no licenses for such sales had been applied for or issued. Although the petitioner alleges that similar sales in other establishments are likewise illegal for the same reason, the hearing was devoted exclusively to the sales at the Macy stores, and the brief submitted by petitioner refers only to the Macy sales.
The evidence submitted at the hearing established that the Macy booths are maintained at the sole expense of the Shubert and other participating theatres; that the persons employed in the booths are employed solely by the Shubert and other theatres; that the sales made arc of reservation slips entitling *210 the purchasers to pick up the tickets themselves at the box offices; and that the sales made are at the box-office prices printed on the tickets. Macy’s participation in the sales consists of the furnishing, for a consideration, of the space occupied by the booths. The construction of the booths and their equipment was paid for by the Shuberts. It is clear that the Macy booths are nothing more than branch box offices of the theatres whose tickets are being sold. There appears to be no law prohibiting theatres from having box offices in addition to those located in the theatres themselves. Nor docs there appear to be any good reason for a law prohibiting theatres from making it more convenient for theatre goers to purchase tickets by spreading out locations where tickets may he purchased at box-office prices and making it unnecessary for them to travel to the theatres’ main box offices in the theatres themselves.
The only statute requiring licenses for the sale of theatre tickets is section 168 of the General Business Law, whose title reads “Reselling of tickets of admission; licenses; fees” (emphasis supplied). The section provides that “No person, firm or corporation shall resell or engage in the business of reselling any tickets of admission * * * without having first procured a license or certificate therefor from the commissioner of licenses of the political subdivision in which such person intends to conduct such business ” (emphasis supplied). It is obvious that the sales at the Macy booths are original sales of tickets which have never been sold before, and that in no sense of the word are they resales, to which alone the statute requiring licenses is directed. The sales at the Macy booths are no different from sales at the box offices in the theatres themselves. They are made at box-office prices by employees representing- the theatres and they involve tickets which have not previously been sold. There is no more basis for requiring branch box offices, such as the Macy booths, to possess a theatre broker’s license, than for requiring the box offices located in the theatres themselves to obtain such a license. The court holds that the license statute has no application to the sales made by theatres in booths leased from R. II. Macy & Co. Inc.
The purpose of the licensing statute is stated in section 167 of the same article to be the “ safeguarding [of] the public against fraud, extortion, exorbitant rates and similar abuses ”. The law was obviously directed at abuses in connection with resales of tickets by theatre ticket brokers and speculators and not at the prices charged by theatres at their own box offices, wherever located. Far from being detrimental to the public *211 interest, the extension of theatre box offices to locations in Macy stores and elsewhere is a boon to the public, serves the public interest and should be encouraged. The fact that the business of theatre brokers, who sell tickets at premiums over box-office prices, may be adversely affected, furnishes no justification for holding that the box-office extensions or branches must be or should be licensed.
Petitioner’s brief cites a provision in section 168, that “ such office or branch office, bureau, ag*ency or sub-agency shall be used exclusively for the sale of tickets and for no other purpose ”. Prior language of section 168 prohibits only the resale of tickets “in any office, branch office, bureau, agency or sub-agency” without a license. The language cited by petitioner clearly refers only to such office, branch office, etc., in which tickets are resold. It has no application to an office, bureau, etc., where tickets are sold for the first time by the theatres themselves.
Intervenor Select Operating Corporation refers to an opinion of the Attorney-General (1929 Atty.-Gen. 136) that sales made in 1929 by Macy of orders reserving seats at box-office prices were not the type of “resales” “which the Legislature had in mind in enacting the statute ”. The statement in the opinion that “ Technically, I presume, the course of businss carried on by R. H. Macy & Co., Inc., in this matter, amounts to a ‘ resale ’ of theatre tickets ” (emphasis supplied) does not apply here, because the sales referred to in the Attorney-General’s opinion were made by Macy’s own employees, whereas in the instant case the sales are made by employees representing the theatres involved, and hired and paid by them and not by Macy.
As the petition must be dismissed for the reasons above indicated, it is unnecessary to consider the point made that petitioner is without standing to maintain the present proceeding.
The claim that the proceeding must be transferred to the Appellate Division for determination is without merit. The statute relied on applies only where the determination sought to be reviewed was made “as a result of a hearing held, and at which evidence was taken, pursuant to direction by laiv ” (emphasis supplied; CPLR 7803, subd. 4; 7804, subd. [g]). The hearing held by respondent was not mandated by any statute and was purely voluntary on his part.
Petitioner’s application is denied and the petition dismissed.